TOWNSHIP OF HOPEWELL, PLAINTIFF, v.
STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided January 25, 1978.

*Mr. Bruce M. Schragger* for plaintiff (*Messrs. Schragger, Schragger* and *Lavine,* attorneys).

*Mr. Paul M. Watter,* Deputy Attorney General for defendant (*Mr. John J. Degnan,* Attorney General, attorney).

MORTON I. GREENBERG, J. S. C. Plaintiff Township of Hopewell seeks a declaration that an expenditure proposed for its 1978 budget be excluded from application of the so-called "cap law," *N. J. S. A.* 40A:4–45.1 *et seq.* The problem confronting Hopewell derives from an affirmative vote in a referendum held November 8, 1977 authorizing Hopewell to unite with the Borough of Pennington for the operation of a public library and thereby withdraw from the Mercer County library system. See *N. J. S. A.* 40:54–29.3. Hopewell noted that, pursuant to *N. J. S. A.* 40:33–9, it had previously, upon certification of the county, made a contribution to the county library system which was included as a portion of the tax bill within the municipality. It is not disputed that the amount so certified for 1977 to be raised by taxes was $111,258.39. Hopewell also noted that the said sum had been essentially a county tax in 1977 and therefore was not included as a portion of its municipal budget in 1977 for cap purposes. It thus feared that inclusion of its share in the 1978 municipal budget of the joint municipal expenditure would be subject to the 5% limitation of *N. J. S. A.* 40A:4–45.3 even though it replaced an expenditure not so included. Consequently it sought an opinion from the Department of Community Affairs that the taxes raised as a portion of the municipal budget to support the new joint library system be excluded from the cap law.

The Department, by letter dated December 20, 1977, advised Hopewell that the appropriation for the joint library system would be within *N. J. S. A.* 40A:4–45.3 and that consequently that amount, together with other additional appropriations, could not exceed the 5% statutory limitation unless one of the exceptions to the statute be otherwise met. There was no suggestion that any exception applied.

On January 6, 1978 Hopewell instituted this action against the State. Because of the urgency of the matter the court, without objection, accelerated the matter for hearing.

In this action Hopewell has expanded on the arguments presented to the Department. It contends that appropriations for the joint library system, the establishment of which was approved by referendum, fall within an exception in the cap law permitting expenditures in excess of the 5% limitation upon referendum approval. But this position cannot be accepted. The referendum approved the following question:

Shall the Township of Hopewell unite with the Borough ·of Pennington in the support, maintenance and control of a joint free public library pursuant to Chapter 155 of the Laws of New Jersey, 1959?

While substantial financial information was released to the public concerning the effect of approval, surely the question itself made no reference to any expenditures. Further, since Pennington itself was previously not a part of the county system, but rather had its own library, there is no suggestion that it would be exempt from the limitation unless the exception in *N. J. S. A.* 40A:4–45.3(j) discussed below applies. It would be anomalous if the same character of expenditures were exempt from *N. J. S. A.* 40A:4–45.3 in Hopewell but not in Pennington.

The municipality further argues that expenditures for the joint library system should not be considered municipal appropriations within the cap law, as they replace expenditures for a like purpose through the county system which were excluded. But adoption of this position would frustrate the intention of the Legislature to limit increases in municipal expenditures. See *N. J. S. A.* 40A:4–45.1; *Clifton v. Laezza,* 149 *N. J. Super.* 97 (App. Div. 1977). Further, the argument would also place Hopewell on a different basis than Pennington.

Hopewell also contends that since the joint library is being established by agreement, *N. J. S. A.* 40:54–29.3, ex-

penditures for it are exempted from the cap law by *L.* 1977, *c.* 10. This act amended *N. J. S. A.* 40A:4–45.3 by expanding the exceptions to the cap limitations to include a subsection reading as follows:

j. Amounts required to be paid pursuant to any contract with respect to use, services or provision of any project, facility or public improvement for water, sewer, solid waste, parking, senior citizen housing or any similar purpose, or payments on account of debt service therefor, between a municipality and any other municipality, county, school or other district, agency, authority, commission, instrumentality, public corporation, body corporate and politic or political subdivision of this State. With respect to the amounts required to ·be paid for senior citizen housing in the above cited political subdivision or bodies, the exceptions shall be subject to the review and approval of the Local Finance Board.

It will be noted, of course, that libraries are not expressly listed. Yet the term "similar purpose" must have some meaning as the court should avoid a construction rendering language superfluous. *General Roofing Co. v. Belmar,* 77 *N. J. Super.* 469, 472 (App. Div. 1962). But surely a sewer plant is not similar to a senior citizens' housing project or a parking garage. There seems to be no common purpose within the enumerated facilities that would permit the term "similar purpose" to carry out a common design and permit application of the rule of *ejusdem generis* to them as a group. See *Denbo v. Moorestown,* 23 *N. J.* 476, 482 (1957). Nevertheless, the explicit use of the term "similar purpose" plainly is related to the specific projects in some way and cannot be broadly read to mean any municipal purpose. Had the Legislature intended the amendment to apply to any municipal purpose it could have simply said so and indeed under that circumstance need not have listed any particular project. Thus, a broad reading of the amendment would render the specific listings as surplusage, a result to be avoided. *General Roofing Co. v. Belmar, supra.* Under these circumstances an appropriate reading of the amendment on its face would be to relate the term "similar purpose" to any one

of the specified projects and thus to exclude from the amendment a library.

The court has been supplied with legislative history concerning the amendment which seems to indicate that the prime purpose of the amendment was to guarantee that municipalities could honor utility service contracts. See, *e. g.,* *N. J. S. A.* 40:14A–23. Such history includes a memorandum to the members of the Senate Revenue, Finance and Appropriations Committee from William Zuzzio, a committee aide, dated September 30, 1976, another memorandum dated September 30, 1976, to the same committee from legislative counsel to the Municipal Bond Association, and a statement from the General Assembly Appropriations Committee. This history reinforces the conclusion reached herein that whatever may be the scope of the amendment it is not applicable in this case. The court does note, however, that in the memorandum of William Zuzzio there is language that, standing alone, would support the concept that the amendment would apply to any joint municipal public project and would exempt from the cap law any such expenditure even though not related to a service contract. Yet the memorandum was written in the context of discussion of financial obligations under a service contract and consequently the court views the history as too ambiguous to support expansion of the language of the amendment beyond what would seem to be any reasonable meaning. See *State v. Patfol, Inc.,* 76 *N. J. Super.* 572, 575 (App. Div. 1962), certif. granted, 39 *N. J.* 89 (1963), certif. vacated, 40 *N. J.* 332 (1963).

Finally, Hopewell contends that the prior appropriation certified to it by Mercer County for the 1977 tax bill for library purposes should be included and considered for purposes of application of the 5% increase limitation in 1978 to have been a portion of the 1977 budget. The court accepts this argument as it carries out the intention of the Legislature. Certainly had the $111,258.39 raised within

Hopewell for county library purposes in 1977 been levied for the joint library the taxpayers would have had equal payments to make.

The insertion in the 1978 budget of an expenditure by way of local appropriation will have an identical effect as if Hopewell had stayed in the county system and raised an equal sum. Therefore, the sense and purpose of the law will be furthered by recognizing a transfer to the 1977 municipal budget for these limited purposes of the amount raised for county library taxes that year. This is therefore the construction which should be adopted. *New Jersey Builders, etc., Ass'n v. Blair,* 60 *N. J.* 330, 338 (1972). The court emphasizes that the method of delivery but not the nature of the service is being altered.

Therefore, the court finds that for purpose of calculation of the base upon which the 1978 budget limitation shall be determined, the 1977 budget shall be increased by the sum of $111,258.39.